**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

| | | |
|---|---|---|
| **ROBERT T. BAILEY, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 3:14-15112** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security

denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-

1383f. This case is presently pending before the Court on  the Parties' cross-Motions for Judgment

on the Pleadings. (Document Nos. 12 and 15.) Both parties have consented in writing to a decision

by the United States Magistrate Judge. (Document Nos. 5 and 8.)

The Plaintiff, Robert T. Bailey, Jr. (hereinafter referred to as "Claimant"), filed applications

for DIB and SSI on August 26, 2011 (protective filing date), alleging disability as of November 15,

2007, due to anxiety disorder, back pain, chronic obstructive pulmonary disease ("COPD"),

headaches, sleep disorder, post-traumatic stress disorder ("PTSD"), degenerative joint disease,

asthma, chronic bronchitis, irregular heartbeat, and high blood pressure.[1] (Tr. at 12, 161-62, 185,

189.) The claims were denied initially and upon reconsideration. (Tr. at 12, 80-83, 84-86, 89-91, 99-

101, 103-05, 106-08, 110-12.) On November 21, 2011, Claimant requested a hearing before an

---

[1] On his form Disability Report - Appeal, dated November 1, 2011, Claimant reported that
his condition had changed in that it was "harder to take air in my lungs and my back." (Tr. at 229.)

Administrative Law Judge (ALJ). (Tr. at 113-14.) The hearing was held on August 30, 2012, before the Honorable Michele M. Kelley. (Tr. at 39-86.) By decision dated November 5, 2012, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 12-24.) The ALJ's decision became the final decision of the Commissioner on March 11, 2014, when the Appeals Council denied Claimant's request for review. (Tr. at 1-6.) On April 21, 2014, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2012). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall

2

v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2012). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of

Impairments in appendix 1 to this subpart for more information about the factors we
consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the
degree of your functional limitation: Activities of daily living; social functioning;
concentration, persistence, or pace; and episodes of decompensation. See 12.00C of
the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas
(activities of daily living, social functioning; and concentration, persistence, or pace),
we will use the following five-point scale: None, mild, moderate, marked, and
extreme. When we rate the degree of limitation in the fourth functional area
(episodes of decompensation), we will use the following four-point scale: None, one
or two, three, four or more. The last point on each scale represents a degree of
limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA

determines their severity. A rating of "none" or "mild" in the first three functional areas (activities

of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth

(episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless

evidence indicates more than minimal limitation in the claimant's ability to do basic work activities.

20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are

deemed severe, the SSA compares the medical findings about the severe impairment(s) and the

rating and degree and functional limitation to the criteria of the appropriate listed mental disorder

to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including
depression, will be deemed severe when (A) there is medically documented continuous or intermittent
persistence of specified symptoms and (B) they result in two of the following: marked restriction of
activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in
maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of
extended duration or (C) there is a medically documented history of a chronic affective disorder of at
least 2 years' duration that has caused more than a minimal limitation of ability to do basic work
activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated
extended episodes of decompensation; (2) a residual disease process resulting in such marginal
adjustment that a minimal increase in mental demands or change in the environment would cause
decompensation; or (3) a current history of 1 or more years' inability to function outside a highly
supportive living arrangement, and the indication of a continued need for such an arrangement.

404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2) (2012).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since November 15, 2007, the alleged onset date. (Tr. at 16, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "depression, anxiety with features of posttraumatic stress disorder (PTSD), headaches, and hearing loss," which were severe impairments. (Tr. at 16, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity to perform medium exertional level work, as follows:

> [T]he [C]laimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except for only frequent balancing, stooping, kneeling, and crouching; only occasional crawling and climbing of ladders, ropes or scaffolds; no climbing of ramps or stairs. The [C]laimant can have frequent, brief, non-confrontational interaction with supervisors and coworkers, and occasional interaction with the public. He should avoid concentrated exposure to fumes, dusts, odors, gases, and poor ventilation.

(Tr. at 18, Finding No. 5.) At step four, the ALJ found that Claimant was unable to perform his past relevant work. (Tr. at 22, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a hand packager at the unskilled, medium level of exertion; as a machine tender and small products assembler at the unskilled, light level of exertion; and as a bench worker and final assembler at the unskilled, sedentary level of exertion. (Tr. at 22-23,  Finding No. 10.) On this basis, benefits were denied. (Tr. at 23, Finding No. 11.)

Scope of Review

 The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

 A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on January 23, 1957, and was 55 years old at the time of the administrative hearing, October 12, 2012. (Tr. at 22, 41, 161.) Claimant had at least a high school education and was able to communicate in English. (Tr. at 22, 46, 188, 190.). Claimant had past relevant work as truck driver, security guard, and infantryman. (Tr. at 22, 46-47, 68-69, 190, 196-201.)

Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to consider his non-severe impairments, namely COPD, osteoarthritis of his knees, chronic lumbosacral pain, high blood pressure, and obesity in assessing his RFC. (Document No. 12 at 5-6.) He asserts that the ALJ's hypothetical questions to the VE did not reflect accurately his limitations and that the VE erred in failing to find that he was credible. (Id.) Furthermore, Claimant asserts that a partially-favorable decision should have been rendered because he "grids-out" on his 55th birthday. (Id. at 6.)

In response, the Commissioner asserts that substantial evidence supports the ALJ's RFC Assessment. (Document No. 15 at 9-12.) The Commissioner notes that the ALJ specifically discussed and relied upon the evidence, including diagnostic testing, imaging results, consultative examination reports, reported activities, and the State agency opinions, in formulating her RFC assessment. (Id. at 9-10.) The ALJ noted that objective tests essentially were normal and Dr. Beard's examination essentially was normal. (Id. at 14.) The Commissioner notes that the ALJ also

considered Claimant's testimony, but found that he was not entirely credible. (Id. at 10.) Finally, the ALJ relied upon Claimant's reported activities, which undermined his credibility. (Id. at 12.) Accordingly, the Commissioner contends that the ALJ's credibility and RFC assessments are supported by substantial evidence. (Id.)

Claimant also alleges that the Commissioner's decision is not supported by substantial evidence because the new and additional evidence supports his allegations of a severe breathing problem. (Document No. 12 at 6-7.) Claimant submitted to the Court an October 24, 2012, decision of the Department of Veterans Affairs that awarded him a sixty percent service-connected rating resulting from his COPD. (Id.; Exhibit A.) Claimant asserts that the VA's decision constitutes new and additional evidence of a severe breathing problem, contrary to the ALJ's decision. (Id. at 7.)

In response, the Commissioner asserts that the additional evidence submitted to the Court neither is new nor material and that Claimant failed to establish good cause for his failure to submit the evidence to the ALJ prior to the date of her decision. (Document No. 15 at 12-14.) The Commissioner asserts that the evidence is not new because it was in existence and available to Claimant prior to the ALJ's November 5, 2012, decision. (Id. at 13.) The evidence also is cumulative of evidence already in the record. (Id.) The Commissioner asserts that the evidence is not material because it fails to demonstrate that the ALJ reasonably would have changed her decision had she considered the evidence. (Id. at 13-14.) The Commissioner contends that because the ALJ's step two finding was decided in Claimant's favor, the ALJ's failure to find that his COPD was a severe impairment is harmless error. (Id. at 14.) Finally, the Commissioner asserts that Claimant failed to establish good cause for his failure to submit the evidence to the ALJ prior to her decision. (Id.) To the extent Claimant contends that his condition deteriorated after the ALJ's decision, the Commissioner contends that Claimant's remedy is to file a new claim for benefits. (Id.)

Accordingly, the Commissioner contends that the new evidence does not warrant remand. (Id.)

Analysis.

1. RFC Assessment.

Claimant first alleges that the ALJ failed to consider SSR 96-9p in assessing his RFC. (Document No. 12 at 5-6.) "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2012). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

SSR 96-9p provides that a "substantial loss to meet any of the basic work-related activities on a sustained basis . . . will substantially erode the unskilled sedentary occupational base and would justify a finding of disability." SSR 96-9p, 1996 WL 374185 *9 (July 2, 1996). A less than substantial loss however, may or may not erode the occupational base and the ALJ is required to assess a claimant's remaining capacities and may consult a vocational expert. Id.

In this case, the ALJ found that Claimant was capable of performing medium work, which

involved only frequent balancing, stooping, kneeling and crouching; only occasional crawling and climbing of ladders, ropes, or scaffolds; and no climbing of ramps or stairs. (Tr. at 18.) She assessed environmental limitations which required Claimant to avoid concentrated exposure to fumes, dusts, odors, gases, and poor ventilation. (Id.)The ALJ further found that Claimant could have frequent, brief, non-confrontational interaction with supervisors and coworkers and occasional interaction with the public. (Id.)

The ALJ noted that an echocardiogram and stress test in April 2010, were negative; that breathing studies in November 2010 and September 2011, nearly were normal; and that a head CT scan in September 2011, was normal. (Tr. at 19, 268-69, 281-84.) The ALJ noted that Dr. Beard's examination essentially was normal and revealed only slightly diminished flexion and mildly positive straight-leg raise testing bilaterally. (Tr. at 20, 300-05.) Additionally, chest x-rays in October 2009, and December 2010, showed no significant findings. (Tr. at 287, 290, 293.) Regarding his mental impairments, the ALJ noted consistent GAF scores between 55 and 60, and it was noted in December 2009, that Claimant's PTSD and depressive disorder were in remission. (Tr. at 20.) In November 2011, Claimant had a GAF score of 71, which was indicative of only mild symptoms. (Id.) Lisa Tate, M.A., a licensed psychologist, opined that Claimant engaged in a full range of activities of daily living; had normal social functioning, persistence, and pace; and only was moderately limited in concentration. (Tr. at 20, 294-99.) The ALJ's assessment of mental functioning was consistent with Ms. Tate's findings.

The ALJ also acknowledged Claimant's reported activities of daily living, which she considered as a full range. (Tr. at 22.) Claimant testified that he drove to go shopping and walked with a shopping cart and drove his wife to her medical appointments, to pay bills, and to buy groceries. (Tr. at 45, 59.) Form reports indicated that Claimant also cared for his pets, cooked full

meals on a daily basis, mowed the yard, cleaned the house, and did laundry. (Tr. at 202-05.) He watched television and played cards at a family member's house. (Tr. at 204-05.)

Although Claimant alleges that he would have been found disabled as of his 55th birthday pursuant to the Grids, it is clear that an individual of advanced age, with at least a high school education and skilled or semi-skilled previous work experience is considered not disabled under the Guidelines. See 20 C.F.R. Part 404, Subpart P, App. 2, § 203.15-17 (2012). Accordingly, Claimant's argument in this regard is without merit.

In view of the foregoing, the Court finds that the ALJ properly assessed Claimant's RFC, including his credibility pursuant to the Regulations. Review of the ALJ's hypothetical questions to the VE indicate that she included all limitations supported by the record. Accordingly, the Court finds that the ALJ's RFC assessment is supported by substantial evidence.

2. Additional Evidence.

Claimant also alleges that the VA's October 24, 2012, decision constitutes new and material evidence that requires remand for further consideration. (Document No. 12 at 6-7.) In considering Claimant's argument for remand, the Court notes initially that the social security regulations allow two types of remand. Under the fourth sentence of 42 U.S.C. § 405(g), the court has the general power to affirm, modify or reverse the decision of the Commissioner, with or without remanding the cause for rehearing for further development of the evidence. 42 U.S.C. § 405(g); Melkonyan v. Sullivan, 501 U.S. 89, 97-98, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991). Where there is new medical evidence, the court may remand under the sixth sentence of 42 U.S.C. § 405(g) based upon a finding that the new evidence is material and that good cause exists for the failure to previously offer the evidence. 42 U.S.C. § 405(g); Melkonyan, 501 U.S. at 98, 111 S.Ct. at 2163. The Supreme Court has explicitly stated that these are the only kinds of remand permitted under the statute.

Melkonyan, 501 U.S. at 98, 111 S.Ct. at 2163.

To justify a remand to consider newly submitted medical evidence, the evidence must meet the requirements of 42 U.S.C. § 405(g) and Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985).[3] In Borders, the Fourth Circuit held that newly discovered evidence may warrant a remand to the Commissioner if four prerequisites are met:  (1) the evidence is relevant to the determination of disability at the time the application was first filed and not simply cumulative; (2) the evidence is material to the extent that the Commissioner's decision "might reasonably have been different" had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant has presented to the remanding court "at least a general showing of the nature" of the newly discovered evidence.  Id.

With regard to the new evidence submitted, the Claimant has not satisfied all four factors of Borders, and therefore, remand on the basis of new evidence is inappropriate. Claimant submitted to the Court an October 24, 2012, decision of the Department of Veterans Affairs that rendered Claimant sixty percent disabled for COPD, or breathing difficulties. (Document No. 12, Exhibit A.)

_____

[3] Within relevant case law, there is some disagreement as to whether 42 U.S.C. § 405(g) or the opinion in *Borders* provides the proper test in this circuit for remand of cases involving new evidence. This court will apply the standard set forth in Borders in accordance with the reasoning previously expressed in this district:

> The court in *Wilkins v. Secretary of Dep't of Health & Human Servs.*, 925 F.2d 769 (4th Cir. 1991), suggested that the more stringent Borders four-part inquiry is superseded by the standard in 42 U.S.C. 405(g).  The standard in § 405(g) allows for remand where "there is new evidence which is material and . . . there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  However, Borders has not been expressly overruled.  Further, the Supreme Court of the United States has not suggested that *Borders*' construction of §  405(g) is incorrect.  Given the uncertainty as to the contours of the applicable test, the Court will apply the more stringent *Borders* inquiry.

*Brock v. Secretary, Health and Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D. W.Va. 1992) (citations omitted).

Under the Borders analysis, the undersigned first finds that the evidence is relevant to the determination at the time the application was filed, as the opinion was dated October 24, 2012, and fell within the relevant time period November 15, 2007, through November 5, 2012.

Under the second step of the Borders analysis, the undersigned finds that the evidence is not material because the ALJ considered Claimant's COPD and breathing difficulties. Although the ALJ did not find Claimant's COPD as a severe impairment, it is clear from the transcript of the administrative hearing that she considered the limitations resulting from Claimant's breathing difficulties and accommodated them in her RFC assessment by limiting his exposure to environmental irritants. The ALJ further restricted Claimant's postural activities, which also accommodates his breathing difficulties. The Court finds therefore, that Claimant does not meet the second step of the Borders analysis.

The Court finds that Claimant fails to meet the third step in the Borders analysis. Claimant fails to set forth any reasons for failing to submit the evidence to the ALJ prior to her decision. The Court therefore, finds that Claimant has not established good cause for his failure to submit the VA's October 24, 2012, decision to the ALJ prior to the issuance of her decision.

Finally, Borders requires that the Claimant present at least a general showing of the new evidence to the Court.  Claimant submitted the VA's decision to the Court, and therefore, has made a showing of the evidence.

The Claimant has failed to satisfy all four factors of Borders and, therefore, remand would be inappropriate; the VA's decision is not material and therefore, fails to provide a basis for changing the ALJ's decision. Claimant also did not establish good cause for his failure to present the decision to the ALJ prior to her decision. The undersigned finds that remand is not warranted in this matter and that the Commissioner's decision is supported by substantial evidence.

13

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 12.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 15.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

.       The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 30, 2015.

R. Clarke VanDervort
United States Magistrate Judge

14